**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

CELY CASTILLO,                                                    :

                Plaintiff,                               :

                                   :

                v.                                   :     **Case No.: 20-CV-4337 (NGG) (PK)**

                                   :

PLAZA MOTORS OF BROOKLYN, INC.,           :     <u>**AFFIDAVIT OF PLAINTIFF**</u>
JOHN ROSATTI, *Individually*, ADAM               :     <u>**CELY CASTILLO**</u>
ROSATTI, *Individually,* and LUIS SIMEOLI,       :
*Individually*,                                                      :

                Defendants.                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

       Plaintiff, CELY CASTILLO, (hereinafter, "Ms. Castillo") being duly sworn, hereby affirms, pursuant to 28 U.S.C. § 1746 and under the penalty of perjury, that the following is true and  correct:

1.     I am the Plaintiff in this action. I make this Affidavit in Opposition to Defendant's Motion to Dismiss and Compel Arbitration.

2.     As such, I am familiar with all the facts and circumstances herein based upon my knowledge and experiences.

3.     For more than seven (7) years, from April 27, 2013, through May 19, 2020, I was employed by and worked for the benefit of Defendant PLAZA MOTORS OF BROOKLYN, INC. (hereinafter, "Plaza").

4.     At all times herein relevant during my tenure at Plaza, Defendant JOHN ROSATTI (hereinafter, "John") was the Chief Executive Officer (CEO) at Plaza.

5.     Additionally, at times herein relevant, Defendant ADAM ROSATTI (hereinafter, "Adam")

was the General Manager of Plaza and my supervisor.

6.      Additionally, at all times herein relevant, Defendant LUIS SIMEOLI (hereinafter, "Simeoli") worked as a Used Car Manager at Plaza. He was both my coworker and my sexual harasser.

7.      I understand that the supporting Declaration submitted by my former Human Resources ("HR") Manager at Plaza, Vera Nuhi (hereinafter, "Nuhi"), was sworn to be "true and correct," but as I will outline in the following three sections, Nuhi has at least *misstated* the truth in her Declaration in several material ways.

## THE SEXUAL HARASSMENT COMPLAINTS

8.      First, in her January 5, 2021 Declaration, **Nuhi stated that I "never complained"** to her that "Simeoli was sexually harassing [me]." (Nuhi Decl. ¶ 3). This is an outright **lie,** told in absolute bad faith; in fact, it was actually, *Nuhi herself* who set up the 2019 meeting in which I first <u>formally</u> complained of Simeoli's harassment. Furthermore, because of how pervasive Simeoli's harassment was, both in my life and in the workplace at Plaza, Nuhi certainly (a) knew of Simeoli's harassment, and (b) heard or overheard me complain informally about Simeoli's behaviors.

9.      As I described in my Complaint filed on September 16, 2020, Simeoli made unwanted and unsolicited sexual advances towards me at Plaza for *years*, both in and out of the workplace, starting as early as 2016. (*See* Complaint, ¶ 12-6).

10.     At first, I tried to use polite tactics to fend him off, for the sake of our professional working relationship. However, by 2019, Simeoli's sexual harassment had only gotten worse – even though he and I had each gotten into <u>separate</u> serious relationships with <u>separate</u> significant others – I had to actively shut him down and constantly demand that he stop with his sexual advances. (*See, eg.,* **Exhibit 1** annexed hereto.)

11.     Yet, it seemed that the harder I pushed back against his harassment, the more brazen Simeoli seemed to become; one day in July 2019, Simeoli actually walked up behind me in an office at Plaza and boldly **grabbed my buttocks and squeezed**. (*See* Complaint, ¶ 13). Simeoli's unsolicited touch made me so uncomfortable, I practically ran out of the office to get away from him, and later that night I texted him to make sure he knew what he did was <u>not</u> okay. (*See* **Exhibit 2** annexed hereto.)

12.     Unfortunately, Simeoli's girlfriend, Soraya Janer ("Janer"), who also worked at Plaza with us, saw my text referencing the incident in the office on Simeoli's phone, and the workplace at Plaza quickly became even more fraught with turmoil and hostility.

13.     Shortly thereafter, on **August 1, 2019**, a meeting was called to discuss the incident. I found out about the meeting when Plaza's Executive Assistant Cathy DeGeorgio ("DeGeorgio") asked me to come into the office to speak with her via text message. (*See* **Exhibit 3** annexed hereto.)

14.     Upon entering the office, I found I was meeting not just DeGeorgio, but also Janer and Nuhi. Immediately, we began discussing the incident with Simeoli in the office, and then I got the opportunity to tell my side of the story.

15.     And this was when I finally reported what I had been going through. There, in that meeting on **August 1, 2019**, **I formally complained about Simeoli's harassment directly to Nuhi, in front of Janer, and DeGeorgio.** Unfortunately, however, they brushed off my complaint instead of offering me help, and I was directed to **"Just cut communication with [Simeoli],"** and **"Stay away from him."** (Complaint, ¶ 18).

16.     Despite this willful inaction by Nuhi, DeGeorgio, and Janer in response to my complaint, **I did indeed complain of Simeoli's harassment in that August 1, 2019 meeting with those three women,** and each of them should be able to attest to that fact. Moreover, several of my

coworkers at Plaza either noticed my absence when I was in the meeting, or saw me entering/leaving the meeting with Nuhi, DeGeorgio, and Janer that day, and could certainly attest to same. (*See, e.g.,* **Exhibit 4** annexed hereto).

## THE "ARBITRATION AGREEMENT"

17.     Secondly, I would like to dispute Nuhi's allegation that I claimed I was "the only employee of Plaza required to sign an arbitration agreement." This was never my position. (Nuhi Decl. ¶ 3)

18.     It is my position that the "Arbitration Agreement" provided by Defendants as Exhibit B to their Motion papers, (annexed hereto as **Exhibit 5**), is completely and utterly illegitimate for the reasons that follow below.

19.     **I have no memory of ever seeing Exhibit 5 before.** While I do agree with Nuhi's statement that my pay plan was modified on **December 9, 2019**, I am positive the Exhibit provided by Defendants does not contain the documents I was given by Defendant Adam in the December 2019 meeting that we really did have about my pay. (For proof of the Adam and I's December meeting, see **Exhibit 6** annexed hereto).

20.     **I did NOT sign Exhibit 5.** While the forgery of my signature is not *terrible*, I can still definitely tell from a glance that someone else wrote my signatures on the second and third pages of this "Agreement." Specifically, please see **Exhibit 13** annexed hereto which clearly evidences upon printing their Agreement, the white-out Defendants used to cover over the name of the employee who originally signed the Agreement and forged my signature. (For comparison, *see* **Exhibits 7 and 8** annexed hereto. These Exhibits are Leased Vehicle Return Receipts that I filled out and signed during different months of 2019. Additionally, it is worth noting, ever since I filled them out, it has been ***Defendants*** who have maintained exclusive control over these Receipts.) Of course, I am not a handwriting expert, but I know my own signature well enough, and these are

the three main issues I see:

    a. I do not write my **C's** tall and circular as both are in __Exhibit 5.__ Mine are typically flatter, more oval-looking. (*See* __Exhibits 7__ and __8.__)

    b. My standard signature is much **simpler** than either of the two on __Exhibit 5__. My handwriting loops over itself quickly in specific places, but it is not cluttered with lines and loops. However, in <u>both</u> of the two signatures on the Agreement, the pen appears to have been brought back and scrawled over the previous letters – especially on the first of the two signatures on the Agreement.

    c. And finally, most significantly - "my" thing with my signature is that I use **essentially the exact same symbol for both my first and my last name,** since both words conveniently start with a "C." This symbol is evident if you look at __Exhibits 7__ and __8__. In the signatures on __Exhibit 5__, however, each part of my name, "Cely" and "Castillo," was very clearly written differently, as if the person who was attempting to forge my writing was actually trying to make some of the letters of "Castillo," which I do <u>not</u> do.

21. **The "terms" of my so-called pay plan are not accurate.** While unfortunately, I was never provided with my own copy of the pay plan documents I signed on **December 9, 2019,** I <u>know</u> both from the look of this pay plan and its terms that __Exhibit 5__ is <u>not</u> the actual pay plan I was given. For example, it was clear to me that this was not actually my pay plan when I saw the commission and salary rates listed – all of which are much higher than what I was actually given, though I could not definitively identify the numbers without seeing the plan I was actually given. Additionally, I noticed that the Agreement also purports to grant me a monthly "Demo Allowance," even though this is something I certainly never had

factored into my pay at any point during my seven (7) years working for Plaza.

22. **The dates in <u>Exhibit 5</u> are inconsistent with each other, and ultimately do not make any sense.** At the top of the paper, the real effective date is scratched out, and a date of **"December 9, 2019"** is written, with an "A.R." beside it, presumptively indicating that Defendant Adam modified that date to reflect the actual date Adam and I met to discuss my new pay plan, although **I have never seen these documents in my life.** The pay plan Adam actually gave me on December 9, 2019, looked very different, <u>and</u> I have no recollection of Adam scratching a date out on the top of the page in front of me during the meeting. Furthermore, at the bottom of the third page of the document, there's a different date – **December 31, 2019,** New Year's Eve. This first confused me simply because the first and last page of the documents are dated differently, though I supposedly received them all at once. But even more damning? After digging into my own files and records, I found that while *I* was indeed working on **December 31, 2019, <u>neither Nuhi or Defendant Adam were.</u>** Which leaves me wondering – how could it be, that of the two people who supposedly "knew" about me signing this Agreement, **<u>neither</u>** were even there the day I signed the Agreement's last page?

23. **<u>Exhibit 5</u> is the <u>clear</u> anomaly among the arbitration agreements provided by Defendants.** (*See* Nuhi Decl. ¶ 5-6, 10; Ex. A, B, D). In Nuhi's Declaration, she discusses and provides a total of seven (7) arbitration agreements, including mine, and if you just look at all seven at the same time, there are an overwhelming number of red flags that mine raises that ultimately destroy its legitimacy. The largest of the red flags is the fact that **every single arbitration agreement Nuhi referenced that was put into effect before or after mine was *<u>electronically signed</u>* through an app called DocuSign.** Except mine. Additionally,

every single arbitration agreement referenced was <u>signed by the GM, Adam, to put it into effect</u>. Except mine. Moreover, <u>none</u> of the Agreements provided that were drafted in 2019 have **page numbers** marking the pages, except mine, <u>and</u> mine are the most faded, indistinguishable page numbers of them all – which seems to indicate that Defendants made **<u>a copy</u>** of another Plaza employee's agreement and have tried to pass it off as mine. (*See* **<u>Exhibit 9</u>** annexed hereto. This Exhibit shows a three-page pay plan and agreement of a Plaza employee named Thomas McAvoy ("McAvoy"), provided by Defendants with their motion papers. McAvoy's agreement in particular has striking similarities to mine, more so than any of the others Defendants provided; McAvoy's agreement and mine share **the same** slightly <u>slanting text</u> on the last two pages, **the same** sentence and paragraph breaks for <u>every</u> sentence on both of the last two pages, and crucially, **the same** style and number of page numbers – **<u>as if they were exact photocopies of each other.</u>**

24. Taking everything altogether, I strongly believe that this Agreement was manufactured <u>after</u> I left Plaza because Defendants knew they would be liable for the harm they did to me by permitting Simeoli's constant, unwelcomed, unreprimanded sexual harassment to go on at Plaza for so long.

## THE PAY CUT

25. Finally, once again contrary to what Nuhi alleged in her Declaration, my pay was reduced on **December 9, 2019**. (*See* Nuhi Decl. ¶ 3, 7). Because I was never provided with a copy of either the pay plan documents that I actually received in Adam's office on December 9, 2019, or my prior pay plan documents, I cannot <u>show</u> the actual difference in numbers, but I am certain that as of December 2019, I was forced to accept a lower flat fee per vehicle sold and I received a lower percentage of commissions, which later did, in fact, cause me to lose money

as soon as the pandemic hit. (*See* **Exhibit 10** annexed hereto for the evidence I do have from December 9, 2019, that demonstrates how my pay was changed.)

26. Further, I *was* retaliated against in this **December 9, 2019 meeting** for raising issues with Simeoli, but not just by being subjected to this new pay structure. No, in an even clearer act of retaliation, on **December 9, 2019**, just after I again complained about the harassment I was enduring from Simeoli, Adam shut me down, and instead of offering to speak to Simeoli about his behavior, Adam's solution was to **move *my office* to a different area of the dealership where I could be "watched" – namely by Simeoli's girlfriend, Janer.**

27. Of course, I told Adam that this seemed inappropriate, and asked him to consider other solutions, but Adam refused and made reference to the number of cars I was buying and selling for Plaza as if the amount of money I made for the company dictated how thoroughly Defendants would respond to my complaints of harassment.

28. Although I knew my monthly sales numbers were indeed meeting and exceeding expectations consistently month-to-month, Adam informed me that Defendants still thought it best to change my plan, purportedly to give me "the opportunity to earn more in commissions." (*See* Nuhi Decl. ¶ 7). After a bit more back and forth, I ended up signing the pay plan documents in Adam's office and accepting the new pay structure and the office move Adam wanted. However, I quickly thereafter messaged Adam and requested that he reconsider at least the move since I had accepted the lowered pay, but Adam would not respond to my texts. (*See* **Exhibit 11** annexed hereto.)

29. Finally, when I suddenly started to lose money due to my pay plan and the pandemic in conjunction, I went to meet with Adam again on **May 19, 2020** to request fairer pay. (*See* Complaint; ¶ 22). Rather than hear me out, emphasize, or try to work out a compromise with

me, Adam ignored my concerns, talked over me, and eventually bluntly told me, **"I'm sorry but your personal issues cannot be brought into my business."**

30. When I left this meeting with Adam, I was under the impression that I had at least the night to think about whether I could continue to work for Plaza for such a low salary – however, the very next morning, Defendant Adam gave someone else my job position, and on **May 21, 2020,** I received a letter via email letting me know that because I had "abandoned my post," my employment with Plaza had been terminated and my role had been filled already. (*See* **Exhibit 12** annexed hereto for contemporaneous text messages I sent to a friend of mine as these events transpired.)

31. Accordingly, it is my firm position, that I was unlawfully terminated in retaliation for requesting fairer pay, just as I was forced to move offices and accept the lower pay plan in retaliation for complaining about Simeoli sexually harassing me on August 1, 2019.

WHEREFORE, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and I hereby respectfully request that Defendants' Motion be denied and that I be granted such other and further relief as the Court may find to be just and proper.

_Cely CASTILLO_
Cely Castillo (print)

_[signature]_
Cely Castillo (signature)

Sworn to before me this 8th day of February , 2021

_Kate Guaman_

K. ELIZABETH GUAMAN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01GU6401624
Qualified in Queens County
My Commission Expires 12-16-2023