**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CELY CASTILLO,

                Plaintiff,

                v.

PLAZA MOTORS OF BROOKLYN, INC.,
JOHN ROSATTI, *Individually*, ADAM
ROSATTI, *Individually,* and LUIS SIMEOLI,
*Individually*,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**Case No.: 20-CV-4337 (NGG) (PK)**

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION

Plaintiff CELY CASTILLO (hereinafter, "Plaintiff" or "Ms. Castillo") submits this Memorandum of Law in Opposition to the Motion to Dismiss Claims and Compel Arbitration ("Motion to Compel"), served on January 8, 2021, by Defendants PLAZA MOTORS OF BROOKLYN, INC., JOHN ROSATTI, ADAM ROSATTI, and LUIS SIMEOLI (hereinafter collectively, Defendants").

**SHALOM LAW, PLLC**

/s/Jonathan Shalom, Esq.

105-13 Metropolitan Avenue
Forest Hills, NY 11375
(718) 917-9474
Jonathan@Shalomlawny.com
**ATTORNEYS FOR PLAINTIFF**

Date of Service: February 8, 2021

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................1

STATEMENT OF FACTS .............................................................................5

STANDARD OF REVIEW ...........................................................................7

ARGUMENTS ..............................................................................................8

I.    THE AUTHENTICITY OF THE ARBITRATION AGREEMENT
      PRODUCED BY DEFENDANTS REMAINS DISPUTED, AND MS.
      CASTILLO IS ENTITLED TO LIMITED
      DISCOVERY ON THIS ISSUE ..........................................................8

II.   THE ARBITRATION AGREEMENT, EVEN **IF** AUTHENTIC, IS
      UNENFORCEABLE FOR NUMEROUS UNCONSCIONABILITY
      REASONS……………………………………………………………10

      A.    **This Entire Agreement is Substantively Unconscionable**…….11

            1.    Shortening of Arbitral Forum Statute of Limitation to Six
                  Months……………………………………………..11

            2.    The One-Sided Grant of Injunctive Relief……………...14

            3.    Arbitrator's Decision is "Non-Appealable."……………18

      B.    **This Entire Agreement is Procedurally Unconscionable**…….18

III.  LAW & EQUITY REQUIRE THE COURT TO STRIKE THIS
      AGREEMENT DOWN AS UNENFORCEABLE

IV.   **CONCLUSION** ................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                          **Pages**

*Acorn v. Household Int'l, Inc.*,
   211 F. Supp. 2d 1160 (N.D. Cal. 2002) ........................................................................ 15

*Advanced Med. & Alternative Care, P.C. v. New York Energy Sav. Corp.*,
   9693/08, 2008 N.Y. Misc. LEXIS 7097 (N.Y. Sup. Ct. Dec. 15, 2008)............................ 9

*Am. Hotel Int'l Group, Inc. v. CGU Ins. Co.*,
   01 CV 0654 (RCC), 2002 U.S. Dist. LEXIS 15933 (S.D.N.Y. Aug. 27, 2002).............. 13

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997)...................................................................................................... 19

*Bensadoun v. Jobe-Riat*,
   316 F.3d 171 (2d Cir. 2003)............................................................................................ 3

*Brennan v. Bally Total Fitness*,
   198 F. Supp. 2d 377 (S.D.N.Y. 2002)............................................................................ 12

*Brower v. Gateway 2000 Inc.*,
   676 N.Y.S.2d 569 (App. Div. 1st Dep't 1998) ....................................................... 8, 9, 10

*Carnegie v. Household Int'l, Inc.*,
   376 F. 3d 656 (7th Cir. 2004) ....................................................................................... 19

*Daubert v. Merrell Dow Pharmaceuticals*,
   509 U.S. 579 (1993)...................................................................................................... 13

*Dreyfuss v. eTelecare Global Solutions-US, Inc.*,
   No. 08 Civ. 1115 (RJS), 2008 U.S. Dist. LEXIS 96945
   (S.D.N.Y. Nov. 14, 2008) ................................................................................................ 3

*Fiser v. Dell Computer Corp.*,
   188 P.3d 1215 (N.M. 2008) .......................................................................................... 18

*Fletcher v Kidder, Peabody & Co.*,
   81 N.Y.2d 623 (1993) ..................................................................................................... 8

*Gay v. CreditInform*,
   511 F.3d 369 (3d Cir. 2007)......................................................................................... 15

*General Electric Co. v. Joiner*,
   522 U.S. 136 (1997)...................................................................................................... 13

*Gillman v Chase Manhattan Bank*,
   73 N.Y.2d 1 (N.Y. 1988) ............................................................................................... 8

*Hayes v. County Bank*,
   811 N.Y.S.2d 741 (App. Div. 2d Dep't 2006) ....................................................... 8, 10

*In re Bridgestone/Firestone, Inc.*,
   131 F. Supp. 2d 1027 (S.D. Ind. 2001) ...................................................................... 13

*Kinkel v. Cingular Wireless, LLC*,
   223 Ill. 2d 1 (Ill. 2006) ................................................................................................ 18

*Kristian v. Comcast Corp.*,
   446 F.3d 25 (1st Cir. 2006) .......................................................................................... 17

*Lowden v. T-Mobile, USA, Inc.*,
   No. C05-1482P, 2006 U.S. Dist. LEXIS 94861 (W.D. Wash. Apr. 13, 2006) ................ 19

*Luna v. Household Fin. Corp. III*,
   236 F. Supp. 2d 1166 (W.D. Wash. 2002) ............................................................. 16, 19

*Mace v. Van Ru Credit Corp.*,
   109 F.3d 338 (7th Cir. 1997) ....................................................................................... 19

*McKee v. AT&T Corp.*,
   164 Wn.2d 372 (Wash. 2008) ................................................................................. 10, 11

*Moss v. Rent-A-Center, Inc.*,
   06 CV 3312 (SLT)(KAM), 2007 U.S. Dist. LEXIS 60011
   (E.D.N.Y. Aug. 15, 2007) ......................................................................................... 3, 8

*Muhammad v. County Bank of Rehoboth Beach, Delaware*,
   189 N.J. 1 (N.J. 2006) ............................................................................................ 19, 20

*Powertel, Inc. v. Bexley*,
   743 So.2d 570 (Fla. Dist. Ct. App. 1999) .................................................................... 17

*Ranieri v. Bell Atlantic Mobile*,
   759 N.Y.S.2d 448 (App. Div. 1st Dep't 2003) ......................................................... 9, 10

*Rollins, Inc. v. Garrett*,
   176 Fed. Appx. 968 (11th Cir. 2006) ........................................................................... 17

*Shlomo Bar-Ayal v. Time Warner Cable Inc.*,
   03 CV 9905 (KMW), 2006 U.S. Dist. LEXIS 75972 (S.D.N.Y. Oct. 16, 2006) ............... 9

*Shroyer v. New Cingular Wireless Serv., Inc.*,
    498 F.3d 976, 984 (9th Cir. 2007 ...................................................................16

*Silberman v. Innovation Luggage, Inc.,*
    01 Civ. 7109 (GEL)(DF), 2002 U.S. Dist. LEXIS 18456
    (S.D.N.Y. Sept. 30, 2002) ...........................................................................13

*Skirchak v. Dynamics Research Corp*.,
    432 F. Supp. 2d 175 (D. Mass. 2006) ..........................................................17

*Szetela v. Discover Bank*,
    97 Cal. App. 4th 1094 (Cal. Ct. App. 2002) ................................................16

*Tellium, Inc. v. Corning, Inc.,*
    No. 03 Civ. 8487 (NRB), 2004 U.S. Dist. LEXIS 2289
    (S.D.N.Y. Feb. 13, 2004) ...............................................................................4

*Tilton, S.A. v. Prudential-Bache Securities, Inc*.,
    No. 85 Civ. 8788 (MJL), 1987 U.S. Dist. LEXIS 2138
    (S.D.N.Y. March 24, 1987 ..............................................................................4

*Ting v. AT&T*,
    182 F. Supp. 2d 902 (N.D. Cal. 2002) ....................................................17, 20

*Trujillo v. Apple Computer*,
    578 F. Supp. 2d 979 (N.D. Ill 2008) ......................................................6, 7, 9

*Trujillo v. Apple Computer*,
    Case No. 07 C 4946, 2008 U.S. Dist. LEXIS 32128 (N.D. Ill. Apr. 18, 2008) ............6, 7

## PRELIMINARY STATEMENT

This action was brought by Ms. Castillo, an experienced Lease Return Manager formerly employed by Defendants. Ms. Castillo has been the victim of a continuous campaign of egregious and wrongful sexual harassment that was not only permitted but perpetuated by Defendants, Plaza Motors of Brooklyn, Inc. ("Plaza"), one of the largest automobile dealerships in New York along with its agents and employees, including Defendants John Rosatti ("John"), Adam Rosatti ("Adam"), and Luis Simeoli ("Simeoli"). (*See* Complaint; ¶ 9-12). For over forty years, Plaza has offered New Yorkers a wide selection of quality new and used vehicles, "hassle-free" automotive services, and an integral business promise: "We're dedicated to building your trust when you visit us, we want every customer who walks through our doors to be treated with professional courtesy and honesty."[1] Unfortunately, however, Plaza's "promises" stop with their customers.

With their motion, Defendants seek to compel the private arbitration of Ms. Castillo's discrimination, sexual harassment, and retaliation claims brought under Title VII, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). However, in support of their motion, Defendants rely on a purported "Arbitration Agreement" that is riddled with inconsistent dates, unfamiliar signatures, and misstatements of the laws of Arbitration and the facts of Ms. Castillo's employment. (*See* **Exhibit 5**.)

For the reason set forth below, Defendants' motion to dismiss Plaintiff's claims and compel arbitration must be denied.

First, it is our position that Ms. Castillo <u>never</u> entered into an Arbitration Agreement

---

[1] Plaza Auto Mall, *About Us,* Plaza Auto Mall, WWW.PLAZAAUTOMALL.COM, https://www.plazaautomall.com/about/, (last visited Feb. 3, 2021, 12:04 PM).

with the Defendants. The authenticity of Ms. Castillo's signature on the "Agreement" document is vigorously disputed by Ms. Castillo. For its part, Defendants have <u>not</u> identified when this Agreement was signed or where this document has been kept since its signing. Further, Defendants have made no efforts to provide the purported original document for analysis or review, nor have they even stated whether an original exists. Although Plaza's Human Resources ("HR") Manager, Vera Nuhi ("Nuhi"), swore under oath in her Declaration that Plaintiff signed this purported Agreement on December 31, 2019, Nuhi does not give <u>any</u> indication as to *how* she knows that Ms. Castillo signed the document on December 31, 2019 – a day in which neither Nuhi, ***nor* Defendant, Adam Rosatti ("Adam")**, who allegedly gave Plaintiff this document, was scheduled to work at Plaza! Moreover, when Ms. Castillo's purported Agreement is compared to the **six (6) other employee's *legitimate* arbitration agreements** that Defendants provided with their motion papers, Ms. Castillo's Agreement is the <u>clear</u> anomaly. The document purporting to be Ms. Castillo's "Arbitration Agreement" is the **<u>only</u>** Agreement of the seven (7) appearing to have been *physically* signed with an ink pen rather than through DocuSign, and the **<u>only</u>** Agreement that was <u>not</u> signed by Plaza General Manager and Defendant, Adam.

Given all these issues of fact, Ms. Castillo should, at the very least, be entitled to initial discovery on the issue of authenticity and an opportunity to have the document reviewed by a handwriting expert.

Second, the Arbitration Agreement further fails because it is highly and irredeemably unconscionable, both procedurally <u>and</u> substantively.

Although the circumstances surrounding the creation and effectuation of this Agreement are murky at best, the facts we do have point to one obvious truth**: <u>the Arbitration Agreement</u>**

2

**at hand is voidable due to the wholly unconscionable and unfair procedures Defendants deployed in their execution of this Agreement**. (*See* **Exhibit 5.**) Defendants' have a routine practice of forcing these Arbitration Agreements upon their employees as a <u>condition</u> to receiving a new pay plan**,** which means every agreement cited by Defendants in their motion papers was produced under **economic duress**, making it voidable as procedurally unconscionable. (Nuhi Decl. ¶ 4).

Moreover, for Plaintiff's Agreement in particular, the procedural unconscionability goes beyond just economic duress; here, there was a **fraud**, if not an ***actual forgery***, in how the document was created and put into effect. Even setting aside, for a moment, the disputes regarding Ms. Castillo's signatures contained in this Agreement, the document is also made fraudulent by the scratched out "Effective Date" at the top of the Agreement, and conspicuously missing signature of the administrator of the Agreement, Defendant Adam. Further, as Plaintiff indicated in her Affidavit, upon being assigned her "new pay plan" on December 9, 2019, Plaintiff explicitly requested that Defendants provide her with a copy of the pay plan documents for her to review – however, Defendants **<u>never,</u>** at any point, provided her with these documents, in violation of both the contract law doctrine of good faith and fair dealings, as well as *the text of the purported Arbitration Agreement itself*, which <u>directly states</u> that Ms. Castillo retained the right to "consult with a person of [her] choosing" before signing the document. (**<u>Exhibit 5</u>,** P 3, ¶ 7). Thus, the enforcement of such an inappropriately and unconscionably produced Agreement would violate both public policy and Plaintiff's statutory rights in this matter.

Additionally, the purported Arbitration Agreement Defendants have brought the court is inundated with <u>multiple</u> unconscionable, unfair, unenforceable, oppressive, over-reaching, and one-sided provisions and statements that have the effect of rendering the entirety of the

Agreement as **unenforceable.** Especially in light of the sexual harassment Ms. Castillo has endured <u>and</u> complained of to Defendants, it is clear that the unconscionable provisions of the Agreement were included for one wholly unlawful reason: to deprive **<u>Ms. Castillo of her</u>** **<u>statutory rights and deter her from exercising and vindicating those rights for her</u>** **<u>protection.</u>**

      The Arbitration Agreement explicitly <u>shortens</u> the statute of limitations to assert a claim before an arbitrator to **<u>a mere six (6) months</u>** from the date of "the event that resulted in the loss, injury, damage, or liability." This time frame has already expired for <u>every</u> event in this case that occurred *at any point before* August 2020; meaning, the time frame has expired for <u>every</u> event herein complained of. It is unmistakable that by seeking to compel arbitration, **<u>Defendants are actively seeking to annihilate all of Plaintiff's claims and avenues for relief</u>.** And if Defendants' motion to compel arbitration were granted, Ms. Castillo would lose her right to assert her statutory claims in *any* forum, despite her perfect adherence to all statutory limitation periods proscribed by Title VII, the NYSHRL, and the NYCHRL. Such an effect makes this provision plainly and substantively unconscionable, as it deprives Plaintiff of her statutory rights to even assert her claims.

      Additionally, the Arbitration Agreement proffered by the Defendants lacks a crucial component: **mutuality**. In the third paragraph, the Agreement purports to "explicitly exclude the requirement to arbitrate any claims *by the Employer for injunctive relief*," **<u>Exhibit 5</u>** (*emphasis added*). This provision unfairly **grants Defendants the right to go to court**, a privilege that arbitration agreements are *meant* to deny <u>both</u> parties. Moreover, because injunctions are the most common actions brought by employers anyway, this exception effectively leaves Plaintiff with no options while Defendants are still left with an unduly

4

favorable one. Again, this provision strips Ms. Castillo's statutory rights and unconscionably limits her avenues for any sort of recovery.

Thus, the Arbitration Agreement at hand is so severely riddled with defects, from inception to implementation, that its enforcement would contravene every public policy and legal doctrine aimed to preserve, protect, and defend all the legal rights of an employee in the workplace. Accordingly, Plaintiff respectfully requests that this Court allow the current action to move forward before this Court. Only then will Ms. Castillo can fairly vindicate her claims.

## STATEMENT OF FACTS

Beginning as early as 2013, not long after Plaintiff was initially hired by Defendants, Plaintiff began being targeted, singled out, and sexually harassed by Defendant Simeoli. (*See* Castillo Aff. ¶ 4.) For years, Simeoli bombarded Plaintiff with an egregious and discriminatory scheme of sexual harassment – although throughout the majority of Plaintiff's employment, Simeoli had a significant other who was not Plaintiff and Plaintiff had a significant other who was not Simeoli. (*See* Castillo Aff. ¶ 9.) Despite this, Simeoli had no qualms with sexually harassing Plaintiff, and Defendants had no qualms about intentionally ignoring Simeoli's behavior. (*See* Castillo Aff.. ¶ 14-5, 26-7).

Contrary to Defendants' allegations in their motion papers, Plaintiff did, in fact, finally first report Simeoli's harassment to her superior in HR, Nuhi, on **August 1, 2019**. (*See* Castillo Aff. ¶ 13). This meeting was attended by *two other witnesses* besides Ms. Castillo and Nuhi – Plaza Executive Assistant, Cathy DeGeorgio ("DeGeorgio"), as well as Plaintiff's coworker and **Simeoli's girlfriend,** Soraya Janer ("Janer"). (*See* Castillo Aff. ¶ 14). Yet, despite all the witnesses present at that meeting, and despite the seriousness of the allegations Ms. Castillo was reporting therein, Nuhi, DeGeorgio, and Janer brushed Plaintiff off, directing here instead to

**"Just cut communication with [Simeoli],"** and **"Stay away from him."** (Castillo Aff. ¶ 15).

Thereafter, months passed, and finally, on **December 9, 2019,** Ms. Castillo was able to meet with Defendant Adam. Plaintiff took this opportunity to again report Simeoli's egregious sexual harassment. (*See* Castillo Aff. ¶ 25). Unfortunately, however, like Nuhi, DeGeorgio, and Janer, Adam did not seem to care about Ms. Castillo's complaints, and instead, Adam callously informed Ms. Castillo he would "solve the problem" by moving her desk to sit directly in front of Simeoli's girlfriend, Janer, so that Ms. Castillo could be **"watched"** by Janer. (Castillo Aff. ¶ 26).  Ms. Castillo attempted to suggest different responses for Adam to take in response to Simeoli's harassment, but Adam was <u>not</u> listening; talking over Plaintiff, Adam quickly shifted the conversation to a discussion about changing Ms. Castillo's pay structure. (*See* Castillo Aff. ¶ 27-8). Adam then informed Ms. Castillo that her pay plan was being modified to give her "**the opportunity to make more in commissions**," though the plan tangibly lowered the salary and flat fees Ms. Castillo used to earn for certain sales. (Castillo Aff. ¶ 28-9). After finally agreeing to accept the downgrade and signing the documents, Ms. Castillo requested that Adam provide her with a copy of the modified pay plan, and Adam agreed. (Castillo Aff. ¶ 30).

However, Adam **<u>never</u>** provided Ms. Castillo with a copy of this modified pay plan –if he had, Plaintiff would gladly produce the same for the Court here and now so that the Court could review for itself that the documents Plaintiff *actually* signed on December 9, 2019 **were <u>nothing</u> like the purported pay plan and "Arbitration Agreement" Defendants have deceptively produced and conveyed to the court with their motion papers.** (*See* **<u>Exhibit 5</u>**; *see also* Castillo Aff. ¶ 19.)

It is Plaintiff's firm position that the three-page document Defendants produced is a complete and total forgery, crafted by Defendants in bad faith.

## **STANDARD OF REVIEW**

When faced with a motion to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 4, courts apply the standard for a motion for summary judgment, meaning the Court's inquiry is whether there is a "genuine issue as to any material fact" that warrants a jury trial. Fed. R. Civ. P. 56(c); *see also*, *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). In determining if a material fact exists, the Court must "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with ... affidavits," and must construe all facts and inferences in the light most favorable to the *non-moving* party, which, here, is Plaintiff. *Nicosia v. Amazon.com, Inc.,* 2017 U.S. Dist. LEXIS 133701, at *14 (E.D.N.Y. Aug. 18, 2017) (*citing Chambers v. Time Warner, Inc.,* 282 F.3d 147, 155 (2d Cir. 2002)); *see also, Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986) ("The evidence of the non-moving party is to be believed and all reasonable inferences are to be drawn in [her] favor.")

In determining whether to compel arbitration in any case, the Court must first consider a pivotal threshold question: Did the parties agree to arbitrate? *See Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir.1987); *Wright v. SFX Entm't Inc.*, No. 00 Civ. 5354, 2001 WL 103433, at *2 (S.D.N.Y. Feb 7, 2001). If a genuine issue of material fact is raised as to <u>the existence of the agreement to arbitrate</u>, a motion to compel arbitration must be denied, and the parties should be afforded discovery and a hearing before a fact-finder. *See Nicosia*, 2017 U.S.Dist. LEXIS 133701, at *5 (E.D.N.Y. Aug 18, 2017) (Denying a motion to compel arbitration and ordering arbitration-related discovery to decide whether the parties formed an agreement to arbitrate); *see also, Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012).

Here, due to the multiple issues of material fact regarding the Arbitration Agreement's

authenticity and a slew of other defects in the Agreement that render it voidable, Defendant's

Motion should be denied.

## **ARGUMENTS**

### **I. THE AUTHENTICITY OF THE ARBITRATION AGREEMENT PRODUCED BY DEFENDANTS REMAINS DISPUTED, AND MS. CASTILLO IS ENTITLED TO LIMITED DISCOVERY ON THIS ISSUE**

Ms. Castillo never entered into an agreement to arbitrate with Defendants. (Castillo Aff. ¶

20). The Arbitration Agreement document which Defendants rely on is insufficiently authenticated

to warrant enforcement without limited discovery as to the genuineness of the document, which is

vigorously disputed by both Plaintiff and the overwhelming weight of the evidence.

First, Nuhi makes no indication of *where* Ms. Castillo's "Agreement" was kept, stored,

and/or saved, *when* it was preserved in such a way, and *who* was responsible for ensuring that it

was saved. (*See generally,* Nuhi Decl.) Additionally, Nuhi fails to state whether she witnessed Ms.

Castillo or Adam signing any of the pages of the document, or if there were any witnesses besides

these two at all. *See id.* Moreover, Nuhi does not in any way indicate how she could possibly know

whether the documents contain genuine signatures of Adam or Plaintiff, and does not even state

whether the document Defendants produced with their motion papers even purports to contain an

original signature, or if it is itself merely a copy of another original document. *See id.* In short, in

no way is Nuhi's Declaration *remotely* sufficient to establish the authenticity of Ms. Castillo's

purported signature on the document. *Id.*

Ms. Castillo, for her part, explicitly states that she does not believe that the document

contains her genuine signature. (*See* Castillo Aff. ¶ 20). Ms. Castillo states that although she *does*

recall signing certain other documents placed before her, she has **no recollection whatsoever** of

reviewing or even *seeing* this purported "Arbitration Agreement" that Defendants have produced.

8

(*See* Castillo Aff. ¶ 19-21). Ms. Castillo also states that she does not believe the document to be authentic because the faded, loopy signatures found on the Agreement do not look remotely like her handwriting. (*See* Castillo Aff. ¶ 20; *see also*, **Exhibit 5**.)

Furthermore, the document is suspect on its face. There are pen scratches at the top of the first page, allegedly made by Defendant Adam, and a new effective date is written beside the scratches: **December 9, 2019**, which is actually the day Ms. Castillo and Adam truly met to discuss her pay. (*See* Castillo Aff. ¶ 22; *see also* **Exhibit 5.**). However, the date that Ms. Castillo supposedly wrote when she signed her name on the last page of the document differed by more than three weeks: the page notes **December 31, 2019,** which makes no sense because not only did Plaintiff's pay plan meeting happen on December 9, 2019, but also, **on December 31, 2019, neither Adam nor Nuhi were even scheduled to work at Plaza**! *See id.* The Agreement is the clear outlier of the seven (7) total Defendants provided; it is the **only Agreement signed on a physical piece of paper with an ink pen,** rather than electronically signed, the only Agreement that has been **"executed"** <u>without</u> **Plaza's GM, Adam, signing it**, and the only one to have been **kept from the employee after signing** – in fact, Defendants have still <u>never</u> sent this Agreement to Plaintiff in any form. (*See* Castillo Aff. ¶ 23-4).

Drawing all reasonable inferences in Plaintiff's favor, such evidence would permit a reasonable factfinder to disregard the shoddy "Arbitration Agreement" offered by Defendant — including the first two "pay plan" pages Plaintiff had never before seen before — and find that **Plaintiff did not sign the Agreement**, which would mean that she is not obligated to arbitrate because she never agreed to arbitrate. *See, e.g., Opals on Ice Lingerie v. Bodylines Inc.,* 320 F.3d 362, 370 (2d Cir. 2003) (ruling that a party was not obligated to arbitrate because the individual's signature on the arbitration agreement was forged and, under New York law, "a forged signature

renders a contract void *ab initio*").

Given the state of this record, Ms. Castillo simply <u>cannot</u> be compelled to arbitrate her statutory claims without first being given the opportunity to (1) review the original "Arbitration Agreement," presuming it does in fact exist, (2) send either the original or certified copy to a handwriting expert to be reviewed and analyzed, and (3) conduct such additional limited discovery as is necessary to determine the genuineness of the document submitted by Defendants. *See Cavendish Traders, Ltd. v. Nice Skate Shoes, Ltd.*, 117 F.Supp.2d 394 (S.D.N.Y., 2000) (holding an issue as to the validity of the signature on a guarantee agreement precluded summary judgment.) Thus, there remains a  <u>genuine issue of material fact</u> as to whether Plaintiff agreed to arbitrate, such that Defendants' Motion to Compel Arbitration must be denied. *See Jin v. Parsons Corp.*, 366 F. Supp. 3d 104, 109 (D.D.C. 2019);

## II. THE ARBITRATION AGREEMENT, EVEN <u>IF</u> AUTHENTIC, IS UNENFORCEABLE FOR NUMEROUS UNCONSCIONABILITY REASONS

The Supreme Court has held that the saving clause of the FAA, 9 U.S.C. § 2, "permits agreements to arbitrate to be **<u>invalidated</u>** by 'generally applicable contract defenses, such as **fraud**, **duress**, or **unconscionability**,'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (*quoting Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Accordingly, under both federal and New York law, "a party may resist enforcement of an agreement to arbitrate on any basis that could provide a defense to or grounds for the revocation of any contract." *Matter of Arbitration Between Teleserve Systems, Inc. and MIC Telecommunications Corporation*, 659 N.Y.S.2d 659, 663 (N.Y.A.D. 4th Dept. 1997).

Thus, an arbitration agreement is <u>not</u> enforceable when it is **unconscionable**. *See Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10 (1988). An arbitration agreement is unconscionable where there is "an <u>absence of meaningful choice</u> on the part of one of the parties together with

contract terms which are unreasonably favorable to the other party." *Id*. Under New York law, unconscionability generally requires <u>both</u> **procedural** and **substantive elements**. *Id*. In determining whether a contract is unconscionable, a court typically takes a "flexible" approach, wherein they carefully review "all the facts and circumstances of a particular case." *Id*.

### A. This Entire Agreement is Substantively Unconscionable

An arbitration agreement is substantively unconscionable when its terms **are unreasonably favorable to the party against whom unconscionability is claimed;** here, Defendants. *See Desiderio v. National Association of Securities Dealers, Inc.,* 191 F.2d 198, 207 (3rd Cir. 1991) *Brennan v. Bally Total Fitness*, 198 F.Supp.2d 377, 382 (S.D.N.Y. 2002). "Substantive elements of unconscionability appear in the **<u>context</u>** of the contract." *Matter of Friedman*, 407 N.Y.S.2d 999, 1008 (N.Y.A.D. 1978).

The United States Supreme Court has well established that, although statutory claims are subject to an arbitration agreement, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 26 (1991), *quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 628 (1985).

Contrary to the Supreme Court's admonishment in *Gilmer*, the Arbitration Agreement Defendants seek to impose in this matter sets forth numerous unconscionable provisions that most definitely force Ms. Castillo to "forgo the substantive rights afforded by the statutes" that she is suing under, i.e. Title VII, the NYHRL, and the NYCHRL.

### 1.  Shortening of Arbitral Forum Statute of Limitation to Six Months

The Arbitration Agreement impermissibly vitiates Ms. Castillo's statutory rights by shortening her statute of limitations to only **six (6) months**. (*See* **Exhibit 5**.) There is no dispute

11

that the limitations periods for filing a Charge of Discrimination under Title VII in New York is 300 days. 42 U.S.C. 2000e-5(e)(1). The statute of limitation of a claim under the New York State Human Rights Law is one (1) year. NY Executive Law, § 297(5). The statute of limitations under the New York City Human Rights Law is three (3) years. NYC Code, § 8-502(d). The substantive rights afforded by these statutes of limitations are completely abrogated by the Arbitration Agreement, which states:

> I agree to file any dispute or claim for loss, damages or liability for arbitration within six (6) months from the date of the event that resulted in the loss, injury, damage or liability or the shortest duration permitted under applicable law and without regard to any other limitations period set forth by law or statute.

**Exhibit 5,** P 3, ¶ 5.

Based on this provision, even though it is **undisputed** that Ms. Castillo has complied with all the statute of limitations periods applicable under Title VII, the NYSHRL, and the NYCHRL, an arbitrator would nevertheless be required to obey the express language of the Agreement and would have to dismiss Ms. Castillo's statutory causes of action **in their entirety.** In short, in seeking to compel the Arbitration of Ms. Castillo's claims, Defendants are in reality seeking **the dismissal of these claims**. This is the height of overreaching, oppressiveness, and unconscionability.

The over-shortened limitation period in this Agreement plainly runs afoul of Supreme Court precedent, which requires that "By agreeing to arbitrate a statutory claim, a party does <u>not</u> **forgo** the substantive rights afforded [to them] by the statute; [the only difference is that the party will be exercising those rights to reach a] resolution in an arbitral, rather than a judicial, forum."

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). In the present case, by sending Ms. Castillo's claims to an arbitral forum, as opposed to allowing them to remain in court, **Ms. Castillo will be forced to "forgo" the right to even *assert* her statutory claims,** as they will be dismissed as untimely under the Agreement's six-month limitations period.

Courts that have faced similar arbitration provisions shortening the applicable statute of limitations have not hesitated to find them unconscionable and unenforceable. *See Parilla v. IAP Worldwide Services VI, Inc.*, 368 F.3d 269 (3rd Cir. 2004) (finding a 30-day notice provision in an employment arbitration agreement is unconscionable); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1175 (9th Cir. 2003) (ruling the shortened one year limitation period unconscionable and unenforceable); *Circuit City Stores, Inc., v. Adams*, 279 F.3d 889, 894 (9th Cir.) cert. den. 535 U.S. 112 (2002) (throwing out the shortened one-year statute of limitations as unenforceable); *Plaskett v. Bechtel International, Inc.,* 243 F.Supp.2d 334, 341 (D. Vi. 2003) (holding that an agreement's requirement that the employee notify the employer "within thirty days of the event forming the basis of the claims" is unreasonable); *Lucey v. FedEx Ground Package Systems, Inc.,* 2007 WL 3052997, *7 (D.N.J. 2007) (voiding an arbitration agreement with a shortened 90-day statute of limitation as unconscionable and unenforceable).

Moreover, when a statute of limitations period is so strictly reduced in an arbitration agreement, as is the case here, the restriction is almost always wholly one-sided. *See, e.g., Plaskett,* 243 F.Supp.2d at 341. And this is precisely the case here. Defendants do not have to abide by any shortened time period to assert any claims that they may have against Ms. Castillo. *See* **Exhibit 5.** This further adds to the substantive unconscionability and unlawful oppressiveness of this Agreement. *See Alexander*, 341 F.3d at 267 (Finding that where a defendant Employer imposed a one-sided time restriction on the Plaintiff, the difference in bargaining power between the two

13

parties made the agreement substantively unconscionable because it gave the Employer "such an unfair advantage.")

Furthermore, the Defendants' Agreement appears to be aimed not only at deterring and abrogating Ms. Castillo's statutory rights in the arbitral forum but incredibly, it purports to do so in court as well. The Agreement's six-month statute of limitation for bringing her discrimination and retaliation claims in court is also unlawful, as it is effectively **impossible** for a plaintiff to file a Title VII claims in court within six months. Title VII requires a plaintiff to go through an investigation with the Equal Employment Opportunity Commission ("EEOC") before she has the right to file a civil suit in district court under Title VII. 42 U.S.C. 2000e-5(e) and (f), and that process can take up two 180 days – twice as many days as Defendants bind Plaintiff to in their Agreement!. By implementing this administratively impossible statute of limitations, Defendants have crafted this Agreement in such a way as to **<u>nullify</u>** their employees' Title VII rights and ability to pursue a Title VII claim in court. This is not only unconscionable and oppressive but borderline **malicious**.

### 2.  The One-Sided Grant of Injunctive Relief

The Arbitration Agreement provides:

> The Agreement shall explicitly exclude the requirement to arbitrate any claims by the Employer for injunctive relief, which may be brought in a court of competent jurisdiction.
>
> **<u>Exhibit 5,</u>** P 3, ¶ 3.

Fair arbitration agreements are mutual. However, here, Defendants are trying to hold Plaintiff to terms. In *Trivedi v. Curexo Technology Corp*., the court held an Arbitration Agreement was unenforceable for a provision allowing the employer to go to court to seek an injunction to stop an

employee from disclosing intellectual property. *See* 189 Cal. App. 4th 387 (1st Dist. 2016). The court assessed how the fact that injunctions are the most common actions employers can take against an employee and thus styles the agreement as wholly non-mutual. *See id.*

The same is true here. The above-cited provision in this Arbitration Agreement can alone render this entire Agreement unconscionable because it fundamentally alters Ms. Castillo's statutory rights and common law rights, and it requires her to take on an untenable and undue financial burden that she would not be exposed to in a court of law.

### 3. Arbitrator's Decision is "Non-Appealable."

The Agreement produced by Defendants is also unconscionable and unenforceable because it expressly provides that there is no recourse to court review of the arbitration proceedings. The Agreement states:

> Except as provided by this Agreement, arbitration shall be the sole,
>
> exclusive, and **final** remedy for any dispute between the Employer
>
> and me.                    **Exhibit 5,** P 3, ¶ 4 *(emphasis added)*

This provision expressly and purposefully thwarts any judicial review of the arbitration proceeding as unconscionable as a matter of law.

It is well established that "Plaintiffs may arbitrate <u>Title VII claims</u> only in an arbitral forum that meets [certain] requirements to ensure that the arbitration will not subvert the Title VII statutory scheme. First, arbitration must meet certain standards of **procedural fairness**." *Martens v. Smith Barney, Inc*., 181 F.R.D. 243, 255 (S.D.N.Y 1998). In *Martens*, the court cited to *Cole v. Burns Int'l Sec. Servs*., making clear that "procedural fairness" and a "meaningful review for Title VII claims" go hand in hand. *Martens*, 181 F.R.D. at 255 (*quoting Cole,* 105 F.3d 1465, 1468-69 (D.C. Cir. 1997)). The Court in *Cole* also points out that the "nearly unlimited deference paid to

arbitration awards" is not well-suited in the context of employees' statutory claims. *Cole*, 103 F.3d at 1467. Ultimately, the Supreme Court has agreed, holding arbitration awards to rigorous judicial review, sufficient to ensure compliance with statutory law. *See id.* at 1469; *see also, Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 232 (1987) (Finding judicial review to be crucially important in employment cases to ensure that arbitrators comply with the requirements of the statutes.)

Defendants' attempt to preclude review of an arbitral proceeding is contrary to the explicit statutory requirements and protections of the Federal Arbitration Act. The FAA explicitly states that an arbitration award will be <u>vacated</u> by a district court if (1) the award is "procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators or either of them; (3) where the arbitrators were guilty of misconduct . . . or (4) where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10. Additionally, thanks to case law, the arbitrator's decision may also be vacated if the decision was "in manifest disregard of the law." *Westerbeke Corp. v. Daihatsu Motor Co., Ltd*., 304 F.3d 200, 208 (2nd Cir. 2002).

Here, the Agreement that Defendant seeks to impose does exactly what it must not – it denies Ms. Castillo each of the protections afforded to her by the very Act the Agreement purports to uphold! 9 U.S.C. § 10.

Furthermore, the provision of the Arbitration Agreement stating that an arbitration ruling is "final" is directly contrary to New York law, which the Agreement explicitly invokes. The Agreement provides that "the Agreement shall be construed and enforced in accordance with the laws of the State of New York, without regard to principles of conflict of law." **<u>Exhibit 5</u>**. As

16

explained in the Practice Commentaries to CPLR 7501, this language is sufficient to bring the Arbitration Agreement within the "framework" of the New York CPLR:

> "As discussed in the main volume at pages 311-15, the parties themselves may reject the applicability of the FAA, even if the contract affects interstate commerce, if they include a sufficiently explicit choice-of-law clause…In order to bring the framework of the CPLR into play, the parties would need to include a statement to the effect that both the agreement "and its enforcement" are to be governed by New York law. 4 N.Y.3d at 253, 793 N.Y.S.2d at 835."
>
> NY CPLR 7501 (Practice Commentaries for 2005, C7501: Interface with the Federal Arbitration Act).

Under New York law, it is well established that "arbitration decisions, whether arising from mandatory or consensual arbitration proceedings, are subject to limited judicial review pursuant to CPLR article 75, to comport with constitutional requirements of due process" *Unigard Mut. Ins. Co. v. Hartford Ins. Group*, 485 N.Y.S.2d 805, 807 (N.Y.A.D. 2 Dept.,1985) (emphasis added). Under New York law, an arbitration ruling will be vacated by a reviewing court if it is "totally irrational." *Kaplan v. Werlin*, 626 N.Y.S.2d 815, 817 (N.Y.A.D. 2 Dept. 1995). Basically, whether interpreting under the FAA or New York law, Defendants' "Arbitration Agreement" was written to *purposefully* deny Ms. Castillo her statutory and constitutional rights

In sum, apart from an arbitral forum, the Arbitration Agreement (1) seeks to make it impossible for Ms. Castillo to even assert a Title VII claims in federal court by an administratively impossible statute of limitations, and (2) seeks to deny Ms. Castillo the right in court to have sufficient discovery to establish her claim. Once again, at every turn, the Arbitration Agreement

seeks to disadvantage and prejudice Ms. Castillo in the exercise of her statutory rights, thus revealing (and constituting) its overarching oppressiveness and unconscionability.

## B.  This Entire Agreement is Procedurally Unconscionable

In light of the numerous substantively unconscionable provisions in the Arbitration Agreement discussed above, there remains additional and sufficient evidence of procedural unconscionability in the formation of the agreement for the court to find and determine the entire agreement as unenforceable.

The test for procedural inadequacy in forming a contract is whether, in light of all the facts and circumstances, a party lacked **"a meaningful choice"** in deciding whether to sign the contract. *Brennan v. Bally Total Fitness*, 198 F.Supp.2d 377, 382 (S.D.N.Y. 2002).

Although both substantive and procedural unconscionability should be present for the court to refuse to enforce an arbitration agreement, "they need not be present in the same degree." *Armendariz v. Foundation Health Psychcare Services, Inc*., 24 Call.4th 83, 114 (2000). "Essentially, a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves." *Id.* "In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to conclude that the terms are unenforceable and vice versa. *Id*. See also *State v. Wolowitz*, 468 N.Y.S.2d 131 (N.Y.A.D. 2 Dept. 1983) ("it can be said that procedural and substantive unconscionability operates on a "sliding scale"; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa").

In this case, the evidence of a lack of "meaningful choice" on Ms. Castillo's part is more than adequate to tip the sliding scale of unconscionability to non-enforceability. This was not a

commercial contract between two sophisticated parties acting or negotiating at arms-length. There is no dispute that Ms. Castillo was in a grossly unequal position to Defendant with respect to education and experience. Ms. Castillo does not have a college degree and has no experience or background in human resources.

There is no dispute that Ms. Castillo was not represented by counsel during the meeting she attended on **December 9, 2019**, wherein Defendants allege she was given this forged Agreement**.** There is no dispute that no representative from Defendants at any time told Ms. Castillo that she should have the Agreement reviewed by counsel. Indeed, it is undisputed that Ms. Castillo was not given the opportunity to have the document reviewed by an attorney, nor did she even have the opportunity to take it home or review it at her convenience**.**

No, Ms. Castillo was simply given various documents during that meeting on **December 9, 2019,** informed she was being given a new pay plan and asked to sign on a "take it or leave it" basis. Defendants did <u>not</u> afford Ms. Castillo the time and opportunity to take any documents home to review them before signing. Defendants did not afford Ms. Castillo any opportunity to negotiate or even discuss anything that she signed. <u>This</u> is a procedurally unconscionable way to provide an employee with any sort of contract, whether that be a pay plan, an employment contract, or an arbitration agreement. *See Brennan v. Bally Total Fitness*, 198 F.Supp.2d 377, 382-84 (S.D.N.Y. 2002) (Finding procedural unconscionability where (1) there was disparity in bargaining power between employer and employees, (2) manager failed to given employee adequate time to review the contract, and (3) manager failed to inform the employee that she could review the document with an attorney, (4) manager conceded that those who did not sign document would not be promoted).

### III. LAW & EQUITY REQUIRE THE COURT TO STRIKE THIS AGREEMENT DOWN AS UNENFORCEABLE

The unconscionability of Plaintiff's alleged Arbitration Agreement is irredeemable, and it cannot be severed. But what's more, this Agreement was forged. It was created by Defendants in bad faith as a part of an unlawful, devious plot to defraud Plaintiff, counsel, and the Court. This Agreement is **permeated** with unlawful purposes, contains numerous unconscionable and oppressive terms, and is inherently poisoned by fraud and unconscionability.

Accordingly, this Court should find this whole "Arbitration Agreement" to be null and void and strike it down as unenforceable. Additionally, if this Court, upon a further inquiry into this Agreement, finds that Defendants' purported Arbitration Agreement is in fact forged, as Plaintiff alleges, Plaintiff hereby respectfully requests attorney's fees and sanctions pursuant to Fed. R. Civ. Pro. § 11, 26, and 54, as well as any such remedies as the Court may deem proper.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendants' Motion to Dismiss and Compel Arbitration be denied.

Dated: Forest Hills, New York
February 8, 2021

Respectfully submitted,

**SHALOM LAW, PLLC**

/s/Jonathan Shalom, Esq.
105-13 Metropolitan Avenue
Forest Hills, NY 11375
(718) 917-9474
Jonathan@Shalomlawny.com

**ATTORNEYS FOR PLAINTIFF**

20