**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
**CELY CASTILLO,**                                              **Case No.: 20-CV-4337 (NGG) (PK)**

                                 **Plaintiff,**
                     **-against-**

**PLAZA MOTORS OF BROOKLYN INC., JOHN**
**ROSATTI, ADAM ROSATTI, and LUIS SIMEOLI**

                                 **Defendants.**
-----------------------------------------------------------------X

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**THEIR MOTION TO DISMISS AND COMPEL ARBITRATION**

                                        **MILMAN LABUDA LAW GROUP PLLC**

                                        Jamie S. Felsen, Esq.
                                        Attorneys for Defendants
                                        3000 Marcus Avenue, Suite 3W8
                                        Lake Success, NY 11042
                                        (516) 328-8899

Date of Service: February 22, 2021

**Table of Contents**

**ARGUMENT**………………………........................................................................**1**
**POINT I**………………………........................................................................**1**
    THE VALIDITY OF THE ENTIRE CONTRACT THAT CONTAINS AN ARBITRATION
    PROVISION (ALL OF WHICH PLAINTIFF CONTESTS) IS FOR THE ARBITRATOR,
    NOT THE COURT, TO DECIDE)............................................................**1**
**POINT II**………………………........................................................................**1**
    PLAINTIFF AGREED TO ARBITRATE HER CLAIMS .......................................**1**
**CONCLUSION** ........................................................................**11**

# TABLE OF AUTHORITIES

## Cases

Banus v Citigroup Global Mkts., Inc., 2010 U.S. Dist. LEXIS 40072 (S.D.N.Y. Apr. 23, 2010) . 9

Bar-Ayal v Time Warner Cable Inc., 2006 U.S. Dist. LEXIS 75972 (S.D.N.Y. Oct. 16, 2006) ... 8

Bernardino v Barnes & Noble Booksellers, Inc., 2017 U.S. Dist. LEXIS 192814 (S.D.N.Y. Nov.
    20, 2017) ................................................................................................................................. 9

Brennan v. Bally Total Fitness, 198 F. Supp. 2d 377 (S.D.N..Y 2002)....................................... 11

Ciago v. Ameriquest Mtge. Co., 295 F. Supp. 2d 324 (S.D.N.Y. 2003) ..................................... 10

Convergen Energy LLC v Brooks, 2020 U.S. Dist. LEXIS 139785 (S.D.N.Y. Aug. 5, 2020)...... 1

Errickson v Paychex, Inc., 447 F. Supp. 3d 146 (W.D.N.Y. 2020).............................................. 10

Gonzalez v. Toscorp, Inc., 1999 WL 595632 (S.D.N.Y. Aug. 5, 1999)……………………………4

Hunt v. Raymour & Flanigan, 105 AD3d 1005 (2d Dept. 2013) ............................................. 7, 8

Jamaica Hosp. Med. Ctr. V. Carrier Corp., 5 AD3d 442 (2nd Dept 2004) .................................. 8

Jin v Parsons Corp., 366 F. Supp. 3d 104 (D.D.C. 2019)………………………………………11

John J. Kassner & Co. v City of New York, 46 NY2d 544 (1979)………………………………7

Hunt v Raymour & Flanigan, 105 A.D.3d 1005 (2d Dept 2013) .................................................. 7

Kasraie v Jumeirah Hospitality & Leisure (USA), Inc., 2013 U.S. Dist. LEXIS 147805 (S.D.N.Y.
    Oct. 10, 2013) ........................................................................................................................... 8

Klein v ATP Flight Sch., LLP, 2014 U.S. Dist. LEXIS 91102 (E.D.N.Y. July 3, 2014).............. 9

Lozowsky v. Planet Automall, Inc., 2009 WL 1910726 (E.D.N.Y. Jun. 29, 2009)......................... 3

Mahmud v Kaufmann, 2010 U.S. Dist. LEXIS 51075 (S.D.N.Y. Apr. 15, 2010) .................. 5, 11

Nayal v. HIP Network Servs, IPA, Inc., 620 F. Supp. 2d 5661 (S.D.N.Y. 2009) ....................... 10

Order of United Comm. Travelers of America v. Wolfe, 331 U.S. 586 (1947) ............................. 7

Patterson-Priori v. Unum Life Ins. Co. of Am., 846 F. Supp. 1102 (E.D.N.Y. 1994) ................. 8

Ragone v Atl. Video, 595 F.3d 115 (2d Cir 2010) ........................................................................ 9

Rompalli v. Portnova, 2010 WL 2034396 (S.D.N.Y. May 5, 2010) report and recommendation
    adopted, 2010 WL 2034362 (S.D.N.Y. May 21, 2010)............................................................. 1

Spinelli v NFL, 903 F,3d 185 (2d Cir. 2018)................................................................................. 7

Stern v. eSpeed, Inc., 2006 U.S. Dist. LEXIS 68655, 2006 WL 2741635 (S.D.N.Y. Sep. 22,
    2006) ...................................................................................................................................... 2, 10

Structural Contr. Servs. v URS Corp., 31 Misc. 3d 1208[A], 2011 NY Slip Op 50532[U] (Sup
    Ct, Westchester County 2011) .................................................................................................... 8

Thomson–CSF S.A. v. Am. Arbitration Ass'n, 64 F.3d 773 (2d Cir. 1995)……………….4

Trivedi v. Curexo echnology Corp., 189 Cal. App. 4th 387 (1st Dist. 2016)................................ 8

Valdes v. Swift Transp. Co., 292 F. Supp. 2d 524 (S.D.N.Y. 2003)…………………….…4

Victorio v Sammy's Fishbox Realty Co., LLC, 2015 U.S. Dist. LEXIS 61421 (S.D.N.Y. May 6,
    2015) ................................................................................................................................. passim

Vulcan Power Co. v. Munson, 932 N.Y.S.2d 68 (1st Dept. 2011).................................................. 3

## Statutes

9 U.S.C. § 3...................................................................................................................................... 4

9 U.S.C. § 10.................................................................................................................................... 9

CPLR § 201 …………………………………………………………………………….7

## ARGUMENT

## POINT I

## THE VALIDITY OF THE ENTIRE CONTRACT THAT CONTAINS AN ARBITRATION PROVISION (ALL OF WHICH PLAINTIFF CONTESTS) IS FOR THE ARBITRATOR, NOT THE COURT, TO DECIDE

When a plaintiff challenges the validity of an entire contract and not merely an arbitration clause, the plaintiff's contractual claim must be decided by the arbitrator, not the court. Convergen Energy LLC v Brooks, 2020 U.S. Dist. LEXIS 139785 (S.D.N.Y. Aug. 5, 2020); Rompalli v. Portnova, 2010 WL 2034396, at *4 (S.D.N.Y. May 5, 2010) report and recommendation adopted, 2010 WL 2034362 (S.D.N.Y. May 21, 2010). Here, because Plaintiff challenges the validity of the entire three-page agreement that consists of a pay plan and an arbitration provision, an arbitrator, and not the court, must decide whether there is a valid agreement. For this reason, Defendants' motion must be granted and there is no need to address any of Plaintiff's arguments.

## POINT II

## PLAINTIFF AGREED TO ARBITRATE HER CLAIMS

In the unlikely event that the Court rejects the argument in Point I, Defendants address below Plaintiff's arguments contained in her opposition to this motion.

### A. Plaintiff's Lack of Recollection of Signing The Arbitration Agreement Is Insufficient to Preclude Enforcement

The general rule under New York law is that "a party who executes a contract is considered bound by the terms of that contract." Stern v. eSpeed, Inc., 2006 U.S. Dist. LEXIS 68655, 2006 WL 2741635, at *2 (S.D.N.Y. Sep. 22, 2006). Where, as here, the defendants supply the Court with a copy of the plaintiff's signed arbitration provision, a defendant satisfies its initial burden of establishing an agreement to arbitrate, and the burden shifts to the Plaintiff to successfully avoid

arbitration.  Victorio v Sammy's Fishbox Realty Co., LLC, 2015 U.S. Dist. LEXIS 61421, *28-29 (S.D.N.Y. May 6, 2015).  Plaintiff has failed to meet her burden, as discussed herein.

On June 30, 2020, and then again on September 17, 2020 (the day after this lawsuit was commenced, Defendants provided a copy of the arbitration provision at issue to Plaintiff (See Felsen Decl. Ex. A) at which time Plaintiff conceded that she received and signed it.  (See Felsen Decl. Exhibits A-B).  Indeed, at that time, Plaintiff merely argued that the arbitration provision is not valid because (1) a recent amendment to the New York State Human Rights Law forbids arbitration of sexual harassment claims (an argument she has since abandoned, as the case law has routinely rejected it); and (2) it "is procedurally unconscionable because of the timing and manner in which the Agreement was given to Plaintiff, as well as several other circumstances that show that the point of the Agreement was not fully clear to Plaintiff and that the signing of the Agreement was coerced by Defendant in order to keep Plaintiff quiet about the sexual harassment she was beginning to complain about."  (See Felsen Decl. Ex. B)(emphasis added).

At the pre-motion conference related to the instant motion on December 1, 2020, Plaintiff, once again, did not dispute executing the arbitration provision at issue; she argued to the Court that the arbitration provision was "in a stack of papers" she was given in December 2019 during a meeting regarding her pay (not in a meeting regarding a complaint about sexual harassment as she seems to argue) and that she was "forcefully asked to sign" it.  (See Felsen Decl. Ex. C, at 3:19-4:8; 5:2-6).

In a December 3, 2020 e-mail, Plaintiff, again, conceded that she received the arbitration provision on December 9, 2019, which she claimed in the e-mail was forced upon her after she

allegedly complained about sexual harassment to Vera Nuhi ("Nuhi") in late 2019.  (See Felsen Decl. Ex. D).[1]

Incredibly, in her opposition to the instant motion, Plaintiff has provided a completely different version of events that contradicts her prior admissions that she was given and signed the arbitration provision.  She now conveniently claims, for the first time that, although her pay plan was changed and she was, in fact, given documents by Adam Rosatti ("Rosatti") on December 9, 2019 when they met to discuss her pay and "although she *does* recall signing certain other documents before her, she has no recollection whatsoever of *seeing* this purported Arbitration Agreement", it does not look like her signature, and there was a fraud and may have been a forgery (Plaintiff's Affidavit ¶ 19, MOL at 3, 8).  Putting aside for the moment her completely new, contradictory set of facts, critically, a lack of recollection of signing an arbitration agreement is insufficient to establish that there is no agreement.  Victorio, 2015 U.S. Dist. LEXIS 61421 at 29.  Thus, her lack of recollection of signing the arbitration provision which bears her signature cannot result in any finding other than that she signed it.

Plaintiff bears the burden of proof by clear and convincing evidence to establish fraud.  See Lozowsky v. Planet Automall, Inc., 2009 WL 1910726, *3 (E.D.N.Y. Jun. 29, 2009).  If a party fails to read an agreement, however, the party may not be able to contend that there has been fraud in the execution.  See Vulcan Power Co. v. Munson, 932 N.Y.S.2d 68 (1st Dept. 2011).

Plaintiff has not established fraud.  Her attempt to establish that the signature is not her signature (although she concedes it resembles her signature) is unavailing.  Indeed, although

---

[1] Notably, ¶¶ 17 and 19 of the initial Complaint alleged Plaintiff complained to Nuhi in December 2019 and her compensation was cut just days later and she has amended the Complaint to replace "December 2019" in ¶ 17 with "August 1, 2019", but the Amended Complaint alleges that her pay was reduced just days after she complained to Nuhi (now on August 1, 2019), even though she concedes her pay was not changed until December 9, 2019.  (See ECF Dkt. No. ¶¶ 15, 17-20).

Plaintiff's signature appears slightly different on various company documents (unrelated to the documents at issue), there is a striking resemblance between documents Plaintiff has signed and her signature on the agreement that contains the revised pay plan and arbitration provision.  (Nuhi Reply Decl. Ex. C).[2]

Plaintiff also argues that her agreement is illegitimate because, unlike her agreement that contains the pay plan and arbitration provision that were manually signed, the agreements for other employees that Defendants submitted in Nuhi's January 5, 2021 declaration were electronically signed.  However, the mere fact that some employees signed electronically and Plaintiff signed manually does not mean that Plaintiff's agreement is illegitimate.[3]  In any event, other employees did, in fact, sign their agreements manually, like Plaintiff did.  (Nuhi Reply Decl. Ex. D).

Plaintiff also argues that the pay plan portion of the agreement provided to her "is suspect" because "November 25, 2019" was crossed out and replaced with "12/9/19".  The pay plan was given to Rosatti on November 25, 2019, but Rosatti did not meet with Plaintiff until December 9, 2019 at which time Rosatti crossed out November 25, 2019 and replaced it with "12/9/19".  (Rosatti Decl. ¶ 6).  Indeed, Plaintiff concedes that she met with Rosatti on December 9, 2019 to discuss the new pay plan.  (Plaintiff's Aff. ¶ 19).

---

[2] Plaintiff requests that the pay plan and arbitration provision be submitted to a handwriting expert.  In the event this is necessary (Defendants contend it is not), Plaintiff bears the burden of proving that her signature was forged, including bearing the cost of an expert.  See Victorio, No. 14 CIV. 8678 (CM) (AJP) (S.D.N.Y. February 26, 2015) (A courtesy copy of this decision is annexed to the Felsen Decl.)

[3] Similarly, the fact that Rosatti did not sign the agreement does not make it illegitimate.  See Valdes v. Swift Transp. Co., 292 F. Supp. 2d 524, 531 (S.D.N.Y. 2003) (defendant had no obligation to sign arbitration agreement as it was *plaintiff* who accepted *defendant's* offer to hire her in exchange for her promise to arbitrate).  Indeed, the FAA requires only that an arbitration agreement be in writing, not that it be signed by anyone. See 9 U.S.C. § 3.  Parties may be bound to unsigned, written arbitration agreements as long as the 'ordinary principles of contract and agency' are satisfied.  See Gonzalez v. Toscorp, Inc., 1999 WL 595632 (S.D.N.Y. Aug. 5, 1999), at *2 (citing Thomson–CSF S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776–77 (2d Cir. 1995)).  "A non-signatory to an arbitration agreement may be bound by the principle of assumption [which] arises where a party's subsequent conduct indicates the assumption of the obligation to arbitrate." Id. (citations omitted).

In yet another alteration of the facts and a contradiction of other sections of her Affidavit where she concedes that the December 9, 2019 meeting was solely to discuss her new pay plan, Plaintiff appears to argue on page 6 of her MOL that she initiated a meeting with Rosatti on December 9, 2019 to complain about sexual harassment.  Her affidavit contains no such averment of this contradiction, so this argument cannot be considered.  Mahmud v Kaufmann, 2010 U.S. Dist. LEXIS 51075, *12 (S.D.N.Y. Apr. 15, 2010).  Even if this argument were to be considered, in mid-November, Plaintiff's manager, Scott Bonforti ("Bonforti") informed Rosatti that Plaintiff would go missing from work for long periods of time, so Rosatti asked Nuhi to provide him with Plaintiff's time records which she provided to Rosatti on November 18, 2019.  (Rosatti Decl. ¶¶ 3-5).  Rosatti and Bonforti decided they were going to revise Plaintiff's pay plan to reduce her weekly guaranteed salary and increase her monthly volume bonus to incentivize her to work and increase her total compensation.  (Rosatti Decl. ¶ 4).  They also decided to move her from the Kia showroom to the Honda showroom so that Bonforti could keep an eye on her and ensure she worked her entire shifts.  (Rosatti Decl. ¶ 4).  Rosatti asked Nuhi to draft a new pay plan which Nuhi provided to Rosatti on November 25, 2019.  (Rosatti Decl. ¶ 5).  On December 9, 2019, Rosatti and Bonforti met with Plaintiff to present her with an agreement that contained the new pay plan and arbitration provision which the dealership began requiring employees to sign when their pay plans changed.  (Rosatti Decl. ¶ 6).  Plaintiff concedes in ¶ 22 of her affidavit that she received a pay plan during the meeting and in ¶ 28 she states she signed the pay plan documents.  Thus, her argument in her brief that she was given the agreement that contained a new pay plan and arbitration provision on December 9, 2019 in retaliation for her complaining to Rosatti about sexual harassment on December 9, 2019 aside from contradicting her affidavit, is simply implausible.  As Plaintiff conceded at the pre-motion conference and in her affidavit, the sole

purpose of the December 9, 2019 meeting was to discuss her new pay plan.  That was the extent of that meeting.  Plaintiff did not initiate the meeting (just like she concedes she did not initiate the August 1, 2019 meeting wherein she also alleges she complained about sexual harassment).[4] The meeting did not begin with Plaintiff complaining about sexual harassment, and at no point during the meeting did Plaintiff complain about sexual harassment.  (Rosatti Decl. ¶ 9).  Nor did Plaintiff ever, during her employment, complain to Rosatti or Nuhi about sexual harassment. (Rosatti Decl. ¶ 9); Nuhi Reply Decl. ¶ 6).

Astonishingly, later, on page 9 of her brief, Plaintiff flip-flops again and concedes that the December 9, 2019 meeting was to discuss her pay: "December 9, 2019, which is actually the day Ms. Castillo and Adam truly met to discuss her pay."[5]  Based on the conflicting, routinely changing version of events, not a word of what Plaintiff says can be believed.

Because Exhibit C to Nuhi's January 5, 2021 declaration establishes without a doubt that Plaintiff's compensation increased significantly after the December 9, 2019 change to her pay plan, Plaintiff now attempts to contradict the judicial admission in her Complaint that her pay was cut immediately after she complained about sexual harassment in December 2019.  (Compare ¶ 20 of initial Complaint with ¶ 25 of Plaintiff's Affidavit).  Plaintiff's compensation did not decrease until several months after the December 9, 2019 modification to her pay plan – when COVID-19

---

[4] See Exhibit 3 to Plaintiff's Affidavit wherein Cathy DeGeorgio ("DeGeorgio") (not Nuhi as she states in ¶ 8 of her Affidavit) asks Plaintiff to come to her office.  Plaintiff responds "[n]ow what did I do", firmly establishing that Plaintiff did not initiate the meeting nor did she intend on lodging a sexual harassment complaint.  Moreover, in ¶¶ 13-14 of her Affidavit, Plaintiff concedes (in contradiction of ¶ 8) that it was DeGeorgio and not Nuhi who initiated the August 1, 2019 meeting.  In fact, DeGeorgio scheduled the August 1, 2019 meeting because of a complaint lodged against Plaintiff by Soraya Janerpoy.  (DeGeorgio Decl. ¶ 4).  At no time during the August 1, 2019 meeting did Plaintiff lodge a complaint about Simeoli.  (DeGeorgio Decl. ¶ 7; Nuhi Reply Decl. ¶ 6).

[5] Plaintiff has also changed facts contained in her EEOC charge, her Complaint, and her proposed Amended Complaint to suit her ever-changing needs early in this litigation.  See ECF Dkt. Nos. 10-12.  The Court should not countenance this conduct by Plaintiff and her counsel.

struck.  Her compensation decreased simply because she did not work due to the New York State shutdown except for a couple of weeks in May during which time she worked from home, thus limiting her ability to fully perform her job duties that were necessary to earn commissions.  (Nuhi Reply Decl. ¶ 19).  Thus, her compensation, which, it is undisputed, had increased significantly in each of the months after the new pay plan was implemented on December 9, 2019, decreased in March 2020 because COVID-19 struck and Plaintiff's choice to work from home after the dealership reopened, and not because she allegedly complained about sexual harassment.  It is respectfully submitted that Plaintiff and her counsel have intentionally misrepresented that she received a "pay cut" immediately after she allegedly complained about sexual harassment. Plaintiff and her attorney should be sanctioned for this blatant misrepresentation.

For the foregoing reasons, Plaintiff entered into a valid agreement that requires her to arbitrate her claims.

**B.  The Arbitration Agreement Is Not Unconscionable**

A contract provision may be deemed unenforceable on unconscionability grounds "only where it is both procedurally and substantively unconscionable when made" (Spinelli v NFL, 903 F,3d 185 (2d Cir. 2018)), which Plaintiff has not met her burden in establishing.

**1.  The Arbitration Agreement Is Not Substantively Unconscionable**

**a.  The Statute of Limitations Reduction Policy Is Not Substantively Unconscionable**

It is well settled that parties may contractually limit the time for bringing claims, despite a statute of limitations to the contrary.  Order of United Comm. Travelers of America v. Wolfe, 331 U.S. 586, 608 (1947); CPLR § 201; John J. Kassner & Co. v City of New York, 46 NY2d 544 (1979); Hunt v Raymour & Flanigan, 105 A.D.3d 1005 (2d Dept 2013); Jamaica Hosp. Med. Ctr. V. Carrier Corp., 5 AD3d 442, 443 (2nd Dept 2004).  "[C]ourts regularly enforce six month

contractual statute of limitations clauses", like the one here.  <u>Structural Contr. Servs. v URS Corp.</u>, 31 Misc. 3d 1208[A], 2011 NY Slip Op 50532[U] (Sup Ct, Westchester County 2011); <u>see</u> <u>also</u> <u>Hunt v. Raymour & Flanigan</u>, 105 AD3d 1005 (2d Dept. 2013); <u>Kasraie v Jumeirah Hospitality &</u> <u>Leisure (USA), Inc.</u>, 2013 U.S. Dist. LEXIS 147805, at *17-18 (S.D.N.Y. Oct. 10, 2013); <u>Patterson-Priori v. Unum Life Ins. Co. of Am.</u>, 846 F. Supp. 1102, 1105 (E.D.N.Y. 1994); <u>Bar-</u> <u>Ayal v Time Warner Cable Inc.</u>, 2006 U.S. Dist. LEXIS 75972 (S.D.N.Y. Oct. 16, 2006).[6]

Plaintiff relies on cases all of which are outside of the Second Circuit and apply other states' laws concerning contract principles and policies shortening the statute of limitations that are not binding on this court and should not be considered.

Accordingly, the enforceability of the reduced statute of limitations provision is not unconscionable.  However, for purposes of resolving this motion, Defendants will agree to not seek enforcement of it.

### b.  The Ability for Defendants to Seek Injunctive Relief In Court Does Not Render the Arbitration Agreement Unconscionable

Plaintiff relies exclusively on a California state court decision, <u>Trivedi v. Curexo</u> <u>Technology Corp.</u>, 189 Cal. App. 4th 387 (1st Dist. 2016), for the proposition that the arbitration provision is substantively unconscionable because, while it requires the Defendants to also arbitrate disputes they have with Plaintiff, it permits them to commence a court proceeding to seek injunctive relief.  Again, Plaintiff provides no authority from any courts within the Second Circuit

---

[6] Plaintiff timely filed a charge with the EEOC approximately one month after her employment with Plaza Motors terminated and then timely commenced the instant action after receiving a Notice of Right to Sue from the EEOC (although she should have at that time commenced a proceeding in arbitration).  Defendants have no intention of asserting a defense that Plaintiff failed to timely bring her claims.  Moreover, the statute of limitations reduction policy contained in the arbitration provision only applies where "permitted under applicable law".  Therefore, if the statute of limitations on any of Plaintiff's claims may not be reduced under applicable law, the issue is moot.  Additionally, the remedy for an improper statute of limitations reduction policy is for the court to sever the statute of limitations reduction policy from the arbitration agreement and enforce the remainder of the arbitration agreement.  <u>See</u> <u>Ragone</u> <u>v. Atlantic Video at Manhattan Center</u>, 595 F.3d 115, 124-25 (2d Cir. 2010); <u>Castellanos v. Raymours Furniture Co.</u>, 291 F. Supp. 3d 294, 301-302 (E.D.N.Y. 2018).

for this proposition.  This is because courts within the Second Circuit "regularly uphold contracts with provisions allowing only one party to compel arbitration".  Bernardino v Barnes & Noble Booksellers, Inc., 2017 U.S. Dist. LEXIS 192814, *37 (S.D.N.Y. Nov. 20, 2017); see also Klein v ATP Flight Sch., LLP, 2014 U.S. Dist. LEXIS 91102, *22-23 (E.D.N.Y. July 3, 2014); Banus v Citigroup Global Mkts., Inc., 2010 U.S. Dist. LEXIS 40072, *26 (S.D.N.Y. Apr. 23, 2010)(arbitration agreement permitting only one party to seek injunctive relief in court not unconscionable).[7]

Plaintiff also argues that the arbitration agreement causes an undue financial burden on her, but she fails to explain how, nor can she, as the arbitration agreement requires all administrative fees in arbitration other than the first $500 to be borne by Defendants.

### c.  Appealability of Arbitration Award

The arbitration provision states that it is subject to the Federal Arbitration Act ("FAA"). The FAA provides the Plaintiff the right to seek vacatur of the decision of the arbitrator for any reason provided for under 9 U.S.C. § 10.  Therefore, Plaintiff's argument of unconscionability based on her inability to seek judicial review must be rejected.  See Ragone v Atl. Video, 595 F.3d 115, 123 (2d Cir 2010).

### 2.  The Arbitration Agreement Is Not Procedurally Unconscionable

To find an agreement procedurally unconscionable, the circumstances surrounding the negotiations must be "shocking".  Ciago v. Ameriquest Mtge. Co., 295 F. Supp. 2d 324 (S.D.N.Y. 2003).  Where, as here, a party cannot recall signing an arbitration agreement, she cannot prove that

---

[7] Contrary to Plaintiff's argument, there are numerous claims that an employer can bring against an employee for non-injunctive relief (all of which Defendants are required to bring in arbitration), such as breach of contract, conversion, fraud, breach of duty of loyalty, and violation of the faithless servant doctrine.  The circumstances under which an employer would seek injunctive relief against an employee are limited to the enforcement of restrictive covenants such as non-compete and non-solicitation agreements.

a compulsory arbitration provision was procedurally unconscionable.  Id. at 329 (holding that the possibility of compulsory arbitration must not have been particularly objectionable to plaintiff at the time she signed as she has no recollection of signing the Agreement or its contents).  Therefore, based on this alone, there should be a finding of no procedural unconscionability.

In any event, Plaintiff's arguments that she was unsophisticated, in an unequal position as Defendants with respect to education and experience, the arbitration provision was made a condition of her continued employment, and that she did not have the opportunity to negotiate the terms of the arbitration provision have all routinely been rejected by courts because the fact that there is inequality in bargaining power between an employer and a potential or current employee is not a sufficient reason to hold that an employment policy is not enforceable in the employment context.  See Ragone, 595 F.3d 115, 122 (2d Cir 2010)(holding arbitration agreement  not procedurally unconscionable where it was offered on a take it or leave it basis); Nayal v. HIP Network Servs, IPA, Inc., 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009)(same); Victorio, 2015 U.S. Dist. LEXIS 61421 at 32-34 (same) ; Stern v. Espeed, Inc., 2006 WL 2741635, at *2 (S.D.N.Y. Sept. 22, 2006) (continuation of employment alone is sufficient consideration).

Plaintiff also argues she did not have counsel present during the meeting wherein she was given the arbitration provision and was never told she should have it reviewed by counsel.  None of this is required.  Errickson v Paychex, Inc., 447 F. Supp. 3d 14, *36 (W.D.N.Y. 2020).  In any event, notably, the arbitration agreement states that Plaintiff understood that she had a right to consult with an attorney before signing the agreement.  Moreover, Plaintiff did not immediately sign the arbitration provision; in fact, she did not return it for a few weeks.  (Nuhi Reply Decl. ¶ 9).[8]

---

[8] Plaintiff also argues in her brief that she did not have an opportunity to take the arbitration agreement home or review it (without providing any further details), but her affidavit contains no such averment, so this argument cannot be

           ***                 ***                ***

One final argument: Plaintiff argues that there are factual disputes concerning the existence of a valid arbitration agreement and she relies on Jin v Parsons Corp., 366 F. Supp. 3d 104 (D.D.C. 2019), a non-binding decision, for the proposition that, because there are issues of fact in dispute regarding the existence of an arbitration agreement, the motion should simply be denied.  However, the D.C. Circuit Court reversed holding that the district court erred by denying the motion before definitively resolving the issue via trial.   See Jin v Parsons Corp., 966 F.3d 821 (D.C. Cir. 2020). Therefore, if the Court concludes there are factual disputes concerning whether an arbitration agreement exists (which Defendants vehemently deny as discussed in detail *supra*), Defendants' motion should not be denied, but a hearing should be conducted.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the action in its entirety[9] with prejudice, or in the alternative, require the parties to arbitrate and stay this case.

Dated:   Lake Success, New York
        February 22, 2021

                           MILMAN LABUDA LAW GROUP, PLLC

                           By:  /s  Jamie S. Felsen, Esq.

                           3000 Marcus Avenue, Suite 3W8
                           Lake Success, NY 11042-1073
                           jamiefelsen@mllaborlaw.com

                           *Attorneys for Defendants*

---

considered.  Mahmud, 2010 U.S. Dist. LEXIS 51075 at*12.  For example, Plaintiff does not aver that high pressure or deceptive tactics were used as in Brennan v. Bally Total Fitness, 198 F. Supp. 2d 377 (S.D.N..Y 2002) (on which Plaintiff relies), nor does she aver that she was directed to sign it on the spot without first having an opportunity to read it nor that she asked to take it home and was told that she could not.  In fact, as discussed *supra*, she did not sign the arbitration agreement for a few weeks.

[9] On February 19, 2021, Plaintiff amended the Complaint solely to change the date when she first allegedly complained to Defendants from December 2019 to August 1, 2019.  The instant motion should now relate to the Amended Complaint.